Defendant-appellant Tatum A. Johnson appeals from his conviction and sentence, following a no contest plea, for Aggravated Trafficking. Johnson contends that the trial court erred by denying his motion to suppress. Johnson contends that the investigative stop leading to his arrest was unlawful because the officers, who had arrested the driver of the car within a week previously for driving without a license, did not first run a computer check to determine whether the driver of the car had since become licensed. We conclude that a police officer may reasonably perform an investigative stop under these circumstances without first running a computer check. Accordingly, the judgment of the trial court is Affirmed.
 I
Dayton police officer Kenneth Daly saw an approaching car being driven by Hiram Allen. Daly had arrested Allen within a week previously for driving without a license. Because Daly and his partner suspected that Allen might still be without a driver's license, Daly turned his cruiser around and activated his overhead lights to effect a stop.
Allen did not stop right away, but made a series of turns, with the police cruiser in pursuit. This was not a high-speed chase; neither vehicle was going very fast. Daly described what then happened as follows:
 Q. Thank you. Approximately how long did you follow the car that was being driven by Mr. Allen?
 A. Probably about a minute or so. We followed as it circled that one half block through the alley. They pulled out back onto Superior and continued about the same speed still down Superior until they got about half way between Ferguson and Broadway. There is a park that sits right on the corner there. As they pulled back out onto Superior, Mr. Johnson kept looking back at us and leaning forward saying something to the driver and looking back at us. When they got about half way across the park there on Superior there, Johnson rolled his window down and threw a napkin and what appeared to be to us, it was a large piece of a chunky white substance.
* * *
 Q. You're making a gesture with your hand. Can you give us a numerical description of approximately how large the item was that you saw him toss?
 A. It was probably about 4, 4 and a half inches long or so. It was fairly good size, good size piece.
 Q. Okay. And the lighting conditions, what were they at that time?
A. It was daytime out.
 Q. Okay. And when you saw the item go out of the window, what did you do?
 A. Well, from their refusing to stop, and then Mr. Johnson's actions going to and from the driver, when he threw it out, it appeared to me to be crack cocaine. I immediately got out of our cruiser. Officer Orndorff stopped. I got out. He continued after the car to stop the car, and I immediately recovered the piece of crack cocaine from the curb, radioed Officer Orndorff what it was, that it was in fact what we thought it had been, and he continued to follow the car until eventually making the traffic stop down at Dakota and Broadway.
The object thrown out of the car proved to be crack cocaine. Johnson was arrested and charged with Aggravated Trafficking. He moved to suppress the evidence, contending that it was obtained as the result of an unlawful stop. Following a hearing, his motion was overruled. He then pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Johnson appeals.
 II
Johnson's sole Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE BECAUSE THE OFFICERS STOPPED THE VEHICLE WITHOUT HAVING A REASONABLE SUSPICION THAT THE DRIVER WAS UNLICENSED.
Johnson recognizes that we have previously held that a police officer has reasonable and articulable suspicion to stop a car when the officer knows that the driver of the car, at some time three to four weeks earlier, had been under a license suspension.State v. Honeyman (October 22, 1991), Champaign No. 90-CA-24, unreported.
Johnson contends, however, that Honeyman is distinguishable because in his case, unlike in Honeyman, there is evidence in the record that the police officers had the means to run a computer check of Allen's license status, but did not do so.
As suggested in State v. Ellison (July 14, 1994), Franklin App. No. 93-APC-12-1696, unreported, it may be better practice for a police officer to run a computer check before making a stop when the officer has reason to believe that the driver may not have a valid license, but we agree with the court in that case that the failure to do so does not rise to the level of a constitutional infirmity.
We have at least impliedly so held in State v. Shelton (July 29, 1994), Mont. App. 14284, unreported, in which an officer was held to have lawfully stopped a driver whom he had ascertained, by means of a computer check a week earlier, to have been under a license suspension. Because the police officer in that case had initially learned of the suspension as a result of the computer check, the obvious inference is that he had the ability to run a computer check a week later when he again encountered the individual. There is no indication that he did so, however. We found nothing wrong with that stop.
Johnson's sole Assignment of Error is overruled.
 III
Johnson's sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.
Copies mailed to:
Karen L. Sollars
John H. Rion
Hon. Patrick Foley